**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

CIVIL CASE NO. 3:23-CV-395

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | |
| ) | |
| ALL CRYPTOCURRENCY, VIRTUAL ) | MEMORANDUM OF LAW IN |
| CURRENCY, FUNDS, MONIES, AND OTHER ) | SUPPORT OF MOTION TO |
| THINGS OF VALUE SEIZED, PURSUANT TO ) | DISMISS |
| A SEIZURE WARRANT, FROM BINANCE ) | |
| AND ASSOCIATED WITH USER ID # ) | |
| 17392912, SUCH USER ID ASSOCIATED ) | |
| WITH THE NAME, VIPIN KUMAR, AND ) | |
| TETHER DEPOSIT ADDRESS, ) | |
| TCJvnhLCvCwqEzcYiZKbr9F4pkkiLPGzyv. ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

NOW COMES Claimant, Vipin Kumar, by and through undersigned counsel, in a civil cause of forfeiture *in rem* and moves this Honorable Court pursuant to Federal Rule of Civil Procedure 12(b)(6) and Rule G(5)(b) of the Supplemental Rules for Admiralty and Maritime and Asset Forfeiture Claims, for an order dismissing the complaint in the foregoing matter. In support of this motion, Claimant states as follows:

**Factual Background**

The United States commenced a civil forfeiture action *in rem* pursuant to 18 U.S.C. § 981(a)(1)(A) and (C), by filing a Complaint for Forfeiture *In Rem* on June 30, 2023 (the "Complaint"). ECF No. 1. The relevant defendant property here is "ALL CRYPTOCURRENCY VIRTUAL CURRENCY, FUNDS, MONIES, AND OTHER THINGS OF VALUE SEIZED, PURSUANT TO A SEIZURE WARRANT, FROM BINANCE AND ASSOCIATED WITH USER ID # 17392912, SUCH USER ID ASSOCIATED WITH THE NAME, VIPIN KUMAR,

1

AND TETHER DEPOSIT ADDRESS, TCJvnhLCvCwqEzcYiZKbr9F4pkkiLPGzyv." *Id*. On July 3, 2023, an order and warrant for the arrest of the defendant property was issued, the property was seized and remains in custody of the United States Secret Service, a federal agency. *Id.* at ¶ 7; ECF No. 2. Claimant filed a Verified Claim on December 8, 2023, claiming and demanding the return and/or release of "[a]ll assets seized related to 'TARGET ACCOUNT A' as defined in Paragraph 2(a) in the Complaint for Forfeiture *in Rem*." ECF No. 6.[1] As set forth in the verified claim, Claimant does not claim ownership of the assets seized related to "TARGET ACCOUNT B" as defined in Paragraph 2(b) in the Complaint. *Id.*

The factual basis for seizure of the defendant property is set forth in the Complaint, which alleges the cryptocurrency was derived by a so-called "Crypto Website Spoofing Scheme," wherein members of an unidentified criminal group fraudulently used a spoofed cryptocurrency exchanger website to identify themselves as customer service representatives of a legitimate cryptocurrency exchanger. Compl. at ¶ 1, 15-22. When victims accessed the spoofed website, which appeared to be the legitimate cryptocurrency exchanger, the criminal group allegedly created the façade that the victims' accounts at the legitimate cryptocurrency exchanger were locked, causing the victims to provide sensitive personal information, such as their usernames and passwords, and copies of identification documents, so that the criminal group could access the victims' legitimate accounts, including accounts of at least one victim residing in the Western District of North Carolina. *Id*. According to the Complaint, the unidentified criminal group was able to liquidate the victims' accounts of assets held in the legitimate cryptocurrency exchange and then "conducted myriad transactions in proceeds, layering the transactions through multiple accounts and funneling proceeds into and out of accounts in an attempt to obfuscate the origins of

---

[1] Claimant requested, and the Government agreed to allow Claimant, additional time to file the verified claim in this case.

the proceeds and make tracking the proceeds all the more difficult." *Id.* at ¶ 1. Finally, the Complaint alleges that, via this scheme, the criminal group "obtained" the seized cryptocurrency, which allegedly was held in the target accounts identified, including a Binance account with User ID 17392912, which is associated with Claimant Vipin Kumar, or "TARGET ACCOUNT A" referenced in the Complaint. *Id.* at ¶¶ 1-2. The Complaint alleges that the cryptocurrency in TARGET ACCOUNT A is subject to forfeiture because it constitutes or is derived from proceeds of wire fraud conspiracy and wire fraud in violation of 18 U.S.C. §§ 1343 and 1349, and property involved in money laundering and money laundering conspiracy, in violation of 18 U.S.C. §§ 1956, 1956(h), and 1957. *Id.* at ¶ 3.

While the Complaint provides certain details about the fraud perpetrated against each of the victims, it utterly fails to provide sufficient factual detail about how the cryptocurrency allegedly taken from the victims' accounts is related to the cryptocurrency found in Mr. Kumar's account, TARGET ACCOUNT A. Specifically, there is no information in the Complaint regarding (a) the transactions that occurred once the cryptocurrency reached Binance, (b) Mr. Kumar's involvement in the Crypto Website Spoofing Scheme and the unidentified criminal group, (c) evidence of tracing of the assets from the victim's account to TARGET ACCOUNT A, and (d) the specific transactions in Mr. Kumar's account claimed to be allegedly flown/traced from the victim's account. These factual details are necessary to allow Mr. Kumar to undertake an investigation of the facts and to frame a responsive pleading. Moreover, the Complaint, without these important facts, cannot satisfy the heightened pleading standard for such *in rem* forfeiture actions and therefore must be dismissed.

## Legal Standard for Failure to State a Forfeiture Claim

A motion filed pursuant to 12(b)(6) of the Federal Rules of Civil Procedure challenges the legal sufficiency of a complaint. *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). In order to survive a Rule 12(b)(6) motion to dismiss, the facts alleged must be sufficient "to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Requiring plausibility "does not impose a probability requirement at the pleading stage." *Id*. at 556. It does, however, demand more than a "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Ultimately, a claim has facial plausibility when the plaintiff pleads factual content that permits the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

Under Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"), the Government faces "a heightened burden for pleading" in civil forfeiture cases than in actions governed solely by the Federal Rules of Civil Procedure. *United States v. All Assets Held at Bank Julius Baer & Co.*, 571 F. Supp. 2d 1, 16 (D.D.C. 2008). The Government must "allege enough facts so that the claimant may understand the theory of forfeiture, file a responsive pleading, and undertake an adequate investigation." *United States v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1, 14 (D.D.C. 2013) (citation omitted). The Government's pleadings must at least "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial," Supplemental Rule G(2)(f), and "allege enough facts such that the court may infer that the property is subject to forfeiture." *Gulfstream Jet*, 941 F. Supp. 2d at 14. The "heightened particularity requirement is designed to guard against the improper use of seizure proceedings and to protect

property owners against the threat of seizure upon conclusory allegations." *Id*. (citation omitted). And, as typically is the case for any type of civil pleading, the Government is obligated to furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *Gulfstream Jet*, 941 F. Supp. 2d at 13 ("Although the Supplemental Rules govern, the normal set of rules may help to clarify any ambiguity").

Prior to 2006, complaints in forfeiture actions were governed by Rule E(2)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims. Supplemental Rule E(2)(a) provided then and provides now: "In actions to which this rule is applicable the complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Suppl. R. E(2)(a). In 2006, these Rules were amended and renamed the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. The 2006 Amendments added a new Rule G, governing procedures in civil forfeiture actions. *See* Rule G of Supplemental Rules, Advisory Committee's Note on 2006 adoption; *see also* 12 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 3261 (2d ed. Supp. 2008). Under Rule G of the Supplemental Rules, a complaint in an *in rem* forfeiture case must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Suppl. R. G(2)(f). The Advisory Committee's Note, however, clarifies that it adopts the standard that evolved in case law interpreting the earlier Rule E(2)(a) requirement and is intended to "carr[y] this forfeiture case law forward without change." Suppl. R. G, Advisory Committee's Note on 2006 Adoption (citing *United States v. Mondragon*, 313 F.3d 862, 865 (4th Cir. 2002)). Thus, read in conjunction, the Supplemental Rules require the Government to allege enough facts to "support a reasonable belief

that the government will be able to meet its burden of proof at trial," to allow the Claimant "to commence an investigation of the facts and to frame a responsive pleading," Suppl. R. G(2)(f); E(2)(a), such that the court may infer that the property is subject to forfeiture. *United States v. $22,173.00 in U.S. Currency*, 2010 WL 1328953, at *2 (S.D.N.Y. Apr. 5, 2010); *see* Suppl. R. G, Advisory Committee Notes (noting that the "reasonable belief" standard in Rule G(2)(f) mirrors the sufficiency standard that was previously codified in Rule E(2)).

Although both the Federal Rules of Civil Procedure and the Supplemental Rules govern the analysis, the Supplemental Rules trump in the event of an inconsistency. *See* Suppl. R. A(2). Moreover, because civil forfeiture *in rem* permits immediate seizure of property before any pre-deprivation process or judicial review, the Supplemental Rules require more particularity than Rule 8(a)(2) of the Federal Rules of Civil Procedure, which requires only "a short and plain statement" of the claim. *See United States v. $40,000.00 in U.S. Currency*, 2010 WL 2330353, at * 2 (W.D.N.C. May 11, 2010). In light of this particularity requirement, the pleading standard under Supplemental Rule G(2)(f) is "more stringent than the general pleading requirements found in the Federal Rules of Civil Procedure." *Id.* at * 2 (citing *United States v. $38,000.00 Dollars in U.S. Currency*, 816 F.2d 1538, n. 20 (11th Cir. 1987)); s*ee also United States v. $2,200,000 in U.S. Currency*, 2014 WL 1248663, at * 6 (D. Md. Mar. 26, 2014) (noting that the "pleading standard under [Supplemental Rules] is higher than the standard for Fed.R.Civ.P. 8(a)"). Thus, the standards set forth in Supplemental Rules impose a pleading that is somewhat more exacting than the liberal notice pleading standard contemplated by Rule 8(a)(2). *See All Assets Held at Bank Julius Baer & Co.*, 571 F. Supp. 2d at 16 ("Rule G (and its predecessor Rule E(2)) creates a heightened burden for pleading on the plaintiff."); *cf.* Fed. R. Civ. P. 8(a)(2); *see also Mondragon*, 313 F.3d at 865 (4th Cir. 2002); 12 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 3242

(2d ed. 1997) (noting that the supplemental rules "require[] a more particularized complaint than is demanded in civil actions generally," and that "added specifics is thought appropriate because of the drastic nature of those remedies").

**<u>Argument</u>**

In the present action, the Complaint lacks the factual detail necessary to satisfy the heightened pleading requirements of a civil forfeiture complaint by at least "stat[ing] sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial," Supplemental Rule G(2)(f), and "alleg[ing] enough facts such that the court may infer that the property is subject to forfeiture." *Gulfstream Jet*, 941 F. Supp. 2d at 14; *see also* Suppl. R. E(2)(a)(complaint shall state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading.").

The Government has failed to allege facts sufficient to show that the claimed property from TARGET ACCOUNT A is derived from or traceable to illicit activity. Specifically, the Complaint lacks sufficient detail related to the questions of (a) whether there is any connection—let alone a substantial connection—between the cryptocurrency taken from VICTIM ONE and VICTIM TWO's accounts and the cryptocurrency seized from TARGET ACCOUNT A; (b) the commingling of cryptocurrency; (c) how and at what point the cryptocurrency was converted to USDT; (d) on which date(s) the cryptocurrency was placed in TARGET ACCOUNT A after the commingling; and (e) the intermediaries/wallets that were used between the victims' accounts and Mr. Kumar's account, and to whom they belonged.

The Complaint makes reference to three victims of the alleged unidentified criminal group and references the initial characters of three unique Ethereum ("ETH") wallets that were allegedly

involved in the spoofing scheme and that transmitted stolen funds in the Ethereum Network. According to the Complaint, the detected cryptocurrency was stored on TARGET ACCOUNT A and TARGET ACCOUNT B at the time of seizure of the assets by the federal law enforcement agency. The transactions were referenced only with the initial characters of the ETH wallet addresses (not the entire ETH wallet address), the date and the alleged amount as set forth below:

| The specified date of the offense | Alleged Victim | Initial Characters of the ETH wallet | Received Amount (ETH) | Amount in USD on Receiving Date[2] | Target Account |
|---|---|---|---|---|---|
| 1/25/2022 | Victim 1 | 0x00f02 | 70.63 | 173,725.08 | Account A |
| 4/16/2022 | Victim 2 | 0xbd85f4 | 52.90 | 161,888.81 | Account A |
| 6/6/2022 | Victim 3 | 0x48283 | 178.56 | 331,864.47 | Account B[3] |

Compl. at ¶ 26, 30, 34. With respect to the ETH transferred from VICTIM ONE's account, the Complaint merely alleges:

> After VICTIM ONE had given access to the account, 70.63 Ether was subsequently transferred out of VICTIM ONE's Legitimate Exchanger wallet, via two transfers to the UCG at the wallet 0x00f02, and then to multiple decentralized cryptocurrency wallets under the control of the UCG. Ultimately, this 70.63 in Ether derived from VICTIM ONE was moved and converted/exchanged to USDT (other victim assets were converted/exchanged in a similar matter), commingled with other victim assets, and placed in TARGET ACCOUNT A at the Binance cryptocurrency exchange.

*Id*. at ¶ 26. With respect to the ETH transferred from VICTIM TWO's account, the Complaint alleges:

> After VICTIM TWO had given access to the account, 43.60 Ether was transferred out of VICTIM TWO's Legitimate Exchanger wallet to multiple decentralized service cryptocurrency wallets under the control of UCG at 0xbd85f4. Furthermore, 8.81 Ether was consolidated from two other victims and consolidated into VICTIM TWO's transfer for a total of 52.90 Ether. Ultimately, at least 52.90 Ether of

---

[2] The ETH/USD conversion provided here is approximate, as it is based on the price on the date of the transaction. This information was not furnished by the Government in its Complaint.

[3] As set forth in the Verified Claim, Claimant has no knowledge of, or interest in, Target Account B. This has been included for completeness to show how little information was provided in the Complaint.

>VICTIM TWO was exchanged, commingled, and funded TARGET ACCOUNT A at the Binance cryptocurrency exchange.

*Id.* at ¶ 30.

In order to identify the other wallet addresses and transactions, and in order to have sufficient facts to investigate and trace the assets from the alleged victims' accounts to the TRON deposit addresses belonging to TARGET ACCOUNT A, Mr. Kumar is entitled to additional information that is not alleged in this Complaint.

With respect to the allegations related to VICTIM ONE, the Complaint fails because, among other things, it does not provide sufficient information about: the full wallet address of the wallet 0x00f02 under the control of the unidentified criminal group; the entire chain of transactions of the 70.63 ETH from VICTIM ONE's account to TARGET ACCOUNT A; details of the "multiple decentralized cryptocurrency wallets under the control of the UCG"; details of the conversion of ETH to USDT, including the platform on which it was converted, the date of conversion and commingling of other cryptocurrency; or the specific transfer which is alleged to have placed VICTIM ONE's cryptocurrency in TARGET ACCOUNT A at the Binance Cryptocurrency Exchange.

With respect to the allegations related to VICTIM TWO, the Complaint fails because, among other things, it does not provide sufficient information about: the full wallet address of the wallet 0xbd85f4 under the control of the unidentified criminal group; the entire chain of transactions of the 43.60 ETH from VICTIM TWO's account to TARGET ACCOUNT A; any details of the "multiple decentralized cryptocurrency wallets under the control of the UCG"; any details of the commingling of 8.81 ETH into VICTIM TWO's transfer including details of the wallet addresses, transaction details, date of commingling and the wallet in which such cryptocurrency was commingled; any details of the conversion of ETH to USDT, if any, including

9

the platform on which it was converted, the date of conversion and commingling of other cryptocurrency; or the specific transfer which is alleged to have placed the VICTIM TWO's cryptocurrency in TARGET ACCOUNT A at the Binance Cryptocurrency Exchange.

The Claimant requires the above-mentioned information to meaningfully commence an investigation of the facts and to frame a responsive pleading. It is also necessary because such information is not otherwise available to the Claimant. The Exchanger platform(s) involved employ operational wallets known as "hot wallets." All transactions on behalf of the Exchanger's customers takes place through these hot wallets owned by the Exchanger. Once the Exchanger's hot wallet receives a transaction on behalf of its customer, through an internal transfer, it sends the cryptocurrency to the customer's account. The Exchangers involved here, being centralized Virtual Asset Service Providers ("VASPs"), do not provide public access to the internal transactions on the customer accounts. Thus, the information provided by the Complaint limits further tracing of the stolen funds to identify the cross-chain operations between Ethereum and TRON blockchains, and their tracing to TRON deposit addresses associated with TARGET ACCOUNT A deposit wallet (TCJvnhLCvCwqEzcYiZKbr9F4pkkiLPGzyv). In addition, there is insufficient information alleged in the Complaint about the specific amounts of seized virtual assets or the transaction IDs that were received by the Claimant's TRON deposit address to allow for backward tracing of these transactions for source identification. Therefore, as alleged in this Complaint, the currency related to Victims 1 and 2 cannot be attributed to Claimant or TARGET ACCOUNT A. Without this information, Mr. Kumar cannot meaningfully commence an investigation of the facts and frame a responsive pleading.

To satisfy the pleading requirements, the Government must show "it will be able to trace the proceeds of [the] alleged criminal activity to [the] purchase of the Property." *United States v.*

*One Partially Assembled Drag Racer*, 899 F. Supp. 1334, 1341 (D.N.J. 1995); 18 U.S.C. § 981(a)(1)(A)(forfeiture of property "involved in" or "traceable to" money laundering violations). Based on the Complaint, it is entirely unclear what happened to the cryptocurrency once it reached the Binance cryptocurrency exchange and before it made its way into TARGET ACCOUNT A, belonging to Mr. Kumar.

The Government has utterly failed to satisfy the tracing requirement of the forfeiture statute with the facts alleged in this Complaint. *United States v. Contents in Account No. 059-644190-69*, 253 F. Supp. 2d 789, 799-800 (D.Vt. 2003) (hereinafter "*Contents in Account*") ("If the tracing requirement in § 981 is to be given any effect—as, indeed, it must—then the government is required to demonstrate something more than the fact of commingling, even across a series of complicated transactions, to establish that legitimate money is forfeitable by virtue of its commingling with tainted funds."); *see also United States v. BCCI Holdings (Luxembourg), S.A.*, 961 F. Supp. 287, 304 (D.D.C. 1997) (in RICO forfeiture action, applying tracing rules and noting that "[w]hen tainted and untainted funds are commingled in a specific account, accounting principles have been applied to trace the funds"). The Government specifically took on this tracing burden when it elected to proceed under 18 U.S.C. § 981. *See Contents in Account*, 253 F. Supp. 2d at 794 ("[Under § 981] the government must demonstrate the property it has seized is traceable to conduct proscribed by 18 U.S.C. §§ 1956 or 1957," and "[w]here the government cannot prove the traceability of fungible property, as required by § 981, the government is free to proceed under § 984.").

Here, the Government attempts no actual tracing analysis using accounting principles or approaches explored by other courts. *See United States v. Braxtonbrown-Smith*, 278 F.3d 1348, 1353 n.1 (comparing tracing approaches but noting that Section 1956 money laundering conviction

for transactions that involve illegal proceeds did not require tracing all account activity); *Contents in Account*, 253 F. Supp. 2d at 799 (applying specific tracing rule and noting the "nearly limitless contagion" that would occur "if the government is able to seize legitimate, commingled funds" without limitation). Where funds transfer through numerous commingled accounts, "innocent funds are not forfeitable simply because they have been commingled with tainted funds." *Contents in Account,* 253 F. Supp. 2d at 799; *United States v. Tencer*, 107 F.3d 1120, 1134 (5th Cir. 1997) ("[M]erely pooling tainted and untainted funds in an account does not, without more, render that account subject to forfeiture").

A leading case in the Fourth Circuit for the pleading requirements in a civil forfeiture complaint is *United States v. Mondragon*, 313 F.3d 862 (4th Cir. 2002), the same case cited by the Advisory Committee Note on the 2006 adoption of Rule G of the Supplemental Rules. In *Mondragon*, an *in rem* proceeding against seized currency related to drug trafficking, the Court applied the standard that "a complaint under Rule E(2)(a) must allege sufficient facts to support a reasonable belief that the property is subject to forfeiture." *Id.* at 865. The court ultimately found that the complaint satisfied the pleading requirements of Supplemental Rule E(2)(a). However, in reaching its decision, the court noted the following facts: (1) a search of the claimant's vehicle uncovered a hidden compartment with electronic spring locks; (2) the installation job of this hidden compartment was professionally done; (3) the officer who seized the funds had seen many such secret compartments and knew they were routinely used by drug traffickers to transport large quantities of drugs and cash proceeds from drug transactions; (4) the officer found nearly $500,000 sealed in fifteen plastic bags; (5) a drug dog brought to the scene gave a positive identification to the back seat area of the car; (6) claimant had an additional $5,900 cash in her purse; (7) claimant was driving with a revoked, out-of-state license; and (8) the complaint contained a joint affidavit

from the arresting officer and from a U.S. Customs official. *Id.* at 866. Notably, the allegation in *Mondragon* that half a million dollars was found in the car was not sufficient to satisfy the pleading requirements. The Court found:

> The complaint alleges that Sergeant Quill, in his search of the car driven by Mondragon, found nearly one half million dollars sealed in fifteen plastic bags. The presence of that much cash, oddly packaged, ***could raise a suspicion that someone was up to no good, but without more it does not suggest a connection to drug trafficking***.

*Id*. (emphasis added). The court in *Mondragon* then went on to explain that the determinative facts were that the money was hidden; that it was hidden in a professionally installed secret compartment with electronic spring locks; that the seizing officer was experienced in drug investigations; that the seizing officer knew that hidden compartments are routinely used by drug dealers; and that the drug dog alerted on the back seat. *Id.*

The facts in the instant case are far different than those in *Mondragon*, but the decision underscores the importance of the heightened pleading requirements. The Complaint here contains numerous conclusory allegations, including the fact that there were "multiple decentralized cryptocurrency wallets *under the control of the [unidentified criminal group]*." Compl. at ¶ 26 (emphasis added). Notably, the Government has not set forth any facts to support the assertion that the wallets were under the control of any particular person or group of people. Indeed, the Complaint does not allege that Mr. Kumar is a member of such a criminal group, nor does the Complaint allege that the intermediary wallets that were supposedly under the control of the criminal group bear any relationship to Mr. Kumar. Additionally, the Complaint alleges that the "target accounts did not have any legitimate purpose or obtain funding from legitimate sources. Instead, the target accounts existed to facilitate transactions in assets unlawfully obtained from victims." *Id.* at ¶ 36. This conclusory statement, without any facts to support it, does not satisfy

the heightened particularity requirement for civil forfeiture pleadings, which is designed to guard against the improper use of seizure proceedings and to protect property owners. *See Gulfstream Jet*, 941 F. Supp. 2d at 14.

Here, it is also important to note that Claimant's currency at Binance was not "secreted" like it was in *Mondragon*. Despite the Government's effort to attribute criminality to cryptocurrency, the fact that Claimant invests in cryptocurrency is not a crime or suspicious at all, as cryptocurrency has become an increasingly popular investment in recent years, made evident by the alleged victims' investment of the same. As set forth in the Verified Claim, Mr. Kumar is an innocent purchaser of cryptocurrency that was seized from TARGET ACCOUNT A, which may *or may not* have any traces to cryptocurrency currency tied to illegal activity. This may be confirmed once Mr. Kumar is furnished with sufficient information. In any event, Mr. Kumar lawfully purchased the coins in the Binance account associated with USER ID 17392912 and he accumulated the cryptocurrency investments through peer-to-peer cash transactions.

In *United States v. 155 Virtual Currency Assets*, 2021 WL 1340971, at *5 (D.D.C. Apr. 9, 2021), the government sought forfeiture of cryptocurrency assets that were involved in a number of transactions that directly or indirectly supported and financed terrorism, no claimant to the assets responded to the complaint, and the government moved the Court to enter a default judgment against the defendant properties. In analyzing whether the government alleged "sufficient facts to support a reasonable belief that [it] would be able to show at trial by a preponderance of evidence that the Defendant Properties belonged to or afforded a source of influence over an organization that provided material support to an FTO," the court found that "the Government [] provided documented trails of bitcoin transfers originating from several named organizations..." and the complaint alleged the "cluster numbers that sent, held, or received bitcoin and by provid[ed] details

about the transactions themselves," which satisfied the standard. *Id.* at *5-6 (internal citations omitted). The Complaint here fails to do the same. Because the Government has failed to allege sufficient facts necessary to satisfy the heightened pleading requirements of a civil forfeiture complaint to establish a reasonable basis to believe that the Government will be able to meet its burden of proof at trial and to allow Mr. Kumar to commence an investigation of the facts and to frame a responsive pleading, this Court should dismiss the Complaint.

## **Conclusion**

United States seeks to deprive an innocent Claimant of his interest in the claimed property (all the cryptocurrency from TARGET ACCOUNT A), by alleging that at least some of cryptocurrency is "involved in" or traceable to purported money laundering and wire fraud offenses. Compl. at ¶ 1. But the heightened particularity requirements of the Complaint pursuant to Rule G(2)(f) have not been satisfied. The Complaint's factual allegations do not permit a reasonable belief for pleading purposes that the cryptocurrency that was seized from TARGET ACCOUNT A constitutes or was derived from proceeds of wire fraud conspiracy and wire fraud in violation of 18 U.S.C. §§ 1343 and 1349, or property involved in money laundering and money laundering conspiracy, in violation of 18 U.S.C. §§ 1956, 1956(h), and 1957, and was therefore subject to forfeiture in the first place. The Complaint does not state the circumstances giving rise to the forfeiture claim with sufficient particularity that Claimant can commence a meaningful investigation of the facts and draft a responsive pleading.

WHEREFORE, Claimant moves this court for a hearing on Claimant's motion; for an order dismissing the Complaint with prejudice; and for reasonable attorney's fees as provided by 28 U.S.C. § 2465(b)(1).

Dated: December 28, 2023                      Respectfully submitted,

By: /s/ *Bradley L. Henry*
Bradley Henry
1251 Avenue of the Americas, 37th Floor
New York, NY 10020
Tel: 212.880.3800
bradley.henry@akerman.com

Attorney for Claimant Vipin Kumar
*Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on December 28, 2023, I caused a copy of the foregoing Memorandum of Law in Support of Motion to Dismiss to be filed electronically with the Court using the Court's CM/ECF system, which will transmit a notice of electronic filling to all counsel of record in this action.

/s/ *Bradley L. Henry*
Bradley L. Henry